**Arthur A. KOSER, and Roger A. Stone, Plaintiffs,**

v.

**COUNTY OF PRICE, City of Ashland, Wayne Wirsing, in his individual and official capacities, and Robert Plizka, in his individual and official capacities, Defendants.**

No. 92–C–745–C.

United States District Court, W.D. Wisconsin.

Oct. 7, 1993.

A. Steven Porter, Madison, WI, for Arthur A. Koser and Roger A. Stone.

Charles H. Bohl, Whyte Hirschboeck Dudek, Milwaukee, WI, for County of Price, City of Ashland, Wayne Wirsing and Robert Plizka.

**OPINION and ORDER**

CRABB, Chief Judge.

This civil action for injunctive, declaratory and monetary relief is before the court on defendants' motion to dismiss or in the alternative, for summary judgment. Plaintiffs contend that they are entitled to relief because they were arrested unconstitutionally by the individual defendants pursuant to an unconstitutional state statute, Wis.Stat. § 946.06(1)(b). They contend also that the individual defendants were implementing customs and policies of the city and county defendants. (Plaintiffs' challenge to the constitutionality of a state statute affecting the public interest was made known to the Attorney General of the State of Wisconsin early in the proceedings, as required by 28 U.S.C. § 2403 and Fed.R.Civ.P. 24(c). He declined to intervene.)

Defendants seek dismissal or summary judgment on the grounds that the individual defendants are entitled to qualified immunity; the city and county defendants did not have a custom or policy of arresting persons for violation of the Wisconsin statute prohibiting the alteration of the American flag; and plaintiffs are not entitled to punitive damages or attorney's fees. I conclude that the individual defendants' entitlement to qualified immunity cannot be decided without determining disputed issues of fact; that the city and county defendants cannot be held liable for the acts of the sheriff or of the police officer acting at his direction because the sheriff is neither a city nor county policymaker; and that it is not possible to decide at this time whether plaintiffs are entitled to punitive damages or attorney's fees.

For the purpose of deciding this motion, which I have treated as a motion for summary judgment, I find that the following material facts are not in dispute.

FACTS

Plaintiff Arthur A. Koser is an adult resident of the State of Illinois. Plaintiff Roger A. Stone is an adult resident of the State of Wisconsin and is an enrolled member of the Bad River Band of Lake Superior Chippewa Indians. Defendant County of Price is a municipal corporation constituted under the laws of the State of Wisconsin. Defendant City of Ashland is a municipal corporation constituted under the laws of the State of Wisconsin. Defendant Wayne Wirsing is an adult resident of the State of Wisconsin, with 26 years of law enforcement experience. At all material times, he acted in the course and scope of his duty as elected sheriff of Price County. Defendant Robert Plizka is an adult resident of the State of Wisconsin employed as a police officer by the City of Ashland. He has 29 years of law enforcement experi-

ence. At all material times, he acted pursuant to a mutual aid agreement the City of Ashland had with Price County.

On the evening of October 7, 1989, plaintiffs were present at a public boat landing on Round Lake in Price County, Wisconsin, to demonstrate and show support for the rights of Indian spearfishers to spear fish from Round Lake. Also present were persons protesting against the Indians' exercise of spearfishing rights and several dozen police officers from various agencies and jurisdictions. Defendant Wirsing was the chief law enforcement officer at the landing that night, in charge of all police officers at the Round Lake landing. Pursuant to a mutual aid agreement, he had asked for assistance from other jurisdictions and had summoned other officers, including defendant Plizka. On prior occasions, disturbances had occurred and actual violence had broken out on the boat landings while the Chippewa were spearfishing.

In the weeks leading up to October 7, the State of Wisconsin had been conducting negotiations with various Chippewa bands concerning possible reductions of treaty-guaranteed off-reservation hunting and fishing activities. As of October 7, 1989, the negotiators had reached a tentative agreement that had to be approved by the state legislature and by the governing bodies of the bands. The negotiations and tentative agreement were highly publicized and had stimulated heated public debate and demonstrations on both sides of the issue.

Plaintiffs were members of the Wa Swa Gon Treaty Association, an organization prominent among those opposing and protesting the tentative agreement and any reduction in off-reservation hunting and fishing activity. The association had adopted as a method of protest the continuation of lawful spearfishing activities and demonstrations at spearfishing sites in defiance of a request by the Lac du Flambeau Reservation Council and the State of Wisconsin to halt spearfishing activity until the tentative agreement could be approved by members of the reservation councils and the state legislature. Wa Swa Gon's activities during the first week of October 1989 had been reported in the news media throughout the state.

While plaintiffs were present at the boat landing on October 7, a member of the spearfishing party tied a flag to a stick and planted it in the lake bottom a few feet from shore. The flag was an American flag with a picture of a Plains Indian superimposed upon it. This "Plains Indian flag" was in wide use at the time as a general symbol for persons and groups active in advocating Native American treaty rights in public and political fora. The Wa Swa Gon Treaty Association had adopted the flag as its emblem. The flag was often carried and displayed at marches, gatherings and political gatherings for celebrating the rights of Indians and for communicating, promoting and advocating Indian treaty rights. Plaintiff Stone displayed the flag as an expression of his pride in being a Native American and as a demonstration of his support of Chippewa spearfishing rights.

At about 6:50 p.m., defendant Plizka approached plaintiff Stone and asked him several times to put the flag away or face arrest and jail. Stone refused. Defendant Plizka made the request at the direction of defendant Wirsing, who believed the display of the flag could lead to a disturbance of the peace or even violence. When plaintiff Stone refused to comply with the request, defendant Plizka arrested him and took him into custody on a charge of violating Wis.Stat. § 946.-06(1)(b). Plaintiff Stone was transported to the Price County jail, where he was booked and released in a few hours after he had posted $200 for bail. At no time did plaintiff Stone engage in any disorderly or abusive conduct or attempt to incite the crowd for any unlawful purpose.

After plaintiff Stone's arrest, plaintiff Koser unfurled and displayed a second flag, identical to the one displayed earlier by plaintiff Stone. Plaintiff Koser did so to express his support of Chippewa spearfishing. Defendant Plizka and other law enforcement officials formed a line to penetrate the crowd and reach plaintiff Koser. Plizka asked plaintiff Koser several times to put the flag away, but Koser refused. Plizka then arrested Koser for violation of § 946.06(1)(b)

and took him to the Price County jail, where he was released after posting a $200. cash bail. Both plaintiff Koser and plaintiff Stone returned to the boat landing the same evening.

## OPINION

*Qualified immunity*

I begin with defendants' contention that the individual defendants are entitled to qualified immunity because their arrests of plaintiff did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Defendants maintain that they could not have known that their actions violated clearly established law because they were acting pursuant to a Wisconsin law that had never been held to be unconstitutional, and that even if they were not entitled to rely on presumptively valid state law, no federal case would have put them on notice that their actions might violate plaintiffs' constitutional rights. In addition, defendants argue that nothing they did on October 7 was unconstitutional.

In analyzing a claim of qualified immunity, it is necessary to begin by determining the precise nature of the constitutional right the plaintiffs are contending was violated; only in this way is it possible to decide both whether the allegations set out a viable constitutional claim and whether the contours of that right were sufficiently established as of the time of the alleged violation that defendants should have known of them. *Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.) (en banc), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). In this case, plaintiffs are alleging that defendants Wirsing and Plizka violated plaintiffs' First Amendment rights when they interfered with plaintiffs' attempt to express their opinions symbolically by displaying the Plains Indian flag.

■ Plaintiffs' allegations set forth a viable constitutional claim. The protections of the First Amendment do "not end at the spoken or written word." *Texas v. Johnson,* 491 U.S. 397, 404, 109 S.Ct. 2533, 2539, 105 L.Ed.2d 342 (1989). The First Amendment can be implicated by expressive conduct when there is an "intent to convey a particularized message," and when the "likelihood [is] great that the message [will] be understood by those who view[ ] it." *Spence v. Washington,* 418 U.S. 405, 410–11, 94 S.Ct. 2727, 2730, 41 L.Ed.2d 842 (1974) (per curiam). It is undisputed that plaintiffs intended to express a message of support for spearfishing rights when they displayed their altered American flags; that the flags would be understood in that way is demonstrated by defendants' reaction to them.

The next step is to determine the contours of plaintiffs' right to express opinion through the use of an altered American flag. On October 7, 1989, the legal landscape included the existing Wisconsin statute that makes it a Class A misdemeanor to use the flag improperly and the two United States Supreme Court cases, *Spence,* 418 U.S. 405, 94 S.Ct. 2727, and *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, decided on June 21, 1989. Wis.Stat. § 946.06(1)(b) provides (and did provide in 1989):

(1) Whoever intentionally does any of the following is guilty of a Class A misdemeanor:

 * * * * * *

(b) Exposes to public view a flag upon which has been placed or attached a word, mark, design, or advertisement not properly a part of such flag; ...

In *Spence v. Washington,* 418 U.S. 405, 94 S.Ct. 2727, the Court had overturned the conviction of a State of Washington resident who had displayed a flag with a peace symbol taped over it and had been arrested and charged under a statute nearly identical to Wisconsin's improper use statute. (Washington's statute prohibited the exposure to public view of any flag "upon which shall have been printed, painted or otherwise produced, or to which shall have been attached, appended, affixed or annexed any such word, figure, mark, picture, design, drawing or advertisement...." *Spence,* 418 U.S. at 407, 94 S.Ct. at 2728.) In determining that the Washington statute was unconstitutional as applied to the defendant's action, the Court noted that

the defendant had displayed his flag on private property, that he had not engaged in any trespass or disorderly conduct, that the record showed no proof of any risk of breach of the peace or intent on defendant's part to incite violence or even stimulate a public demonstration. *Id.* at 409, 94 S.Ct. at 2729.

In *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, the Court held that burning the American flag to express an opinion about the Republican Party's renomination of Ronald Reagan was conduct " 'sufficiently imbued with elements of communication,' *Spence,* 418 U.S. at 409, 94 S.Ct. at 2730, 'to implicate the First Amendment.' " *Id.* at 406, 94 S.Ct. at 2728. The Court held that Texas's desecration statute was unconstitutional as applied to Johnson's conduct. It noted that the record did not support the state's claim that arresting Johnson was necessary to maintain order in the particular circumstances in which the flag burning took place because Johnson's expressive conduct did not fall within the small class of "fighting words" likely to "provoke the average person to retaliation, and thereby cause a breach of the peace," *Chaplinsky v. New Hampshire,* 315 U.S. 568, 574, 62 S.Ct. 766, 770, 86 L.Ed. 1031 (1942); and because the state prohibition was not necessary to "protect the special role played by [the] flag or the feelings it inspires." *Texas v. Johnson,* 491 U.S. at 418, 109 S.Ct. at 2547. The Court pointed out that it does not permit the government to interfere with actual or expressive speech on the assumption that the mere expression of a provocative idea will incite a riot, but instead requires "careful consideration of the actual circumstances surrounding such expression, asking whether the expression 'is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.' " *Id.* at 409, 109 S.Ct. at 2542 (quoting *Brandenburg v. Ohio,* 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969)).

■ In light of the Supreme Court rulings, it is fair to say that on October 7, 1989, it was clearly established as a matter of constitutional law that persons using the American flag to express political opinions could not be prosecuted for their actions, even if they added symbols to the flag or burned it publicly. As with any speech or expressive conduct, arrests could be made only if the "actual circumstances surrounding such expression" showed that the expression was " 'directed to inciting or producing imminent lawless action and was likely to incite or produce such action.' " *Texas v. Johnson,* 491 U.S. at 409, 109 S.Ct. at 2542. Further, it was established that to take advantage of the exception, the government would have to show that more was at stake than merely a "potential for breach of the peace," *id.,* or that the audience would be likely to take offense at the particular expression. *Id.* at 408, 109 S.Ct. at 2729.

■ Whether defendants Wirsing and Plizka actually knew of these decisions is irrelevant; the test for qualified immunity is an objective one: whether the law was "clear in relation to the specific facts confronting the public official when he acted," *Colaizzi v. Walker,* 812 F.2d 304, 308 (7th Cir.1987), that is, in the light of the preexisting law the unlawfulness of his action must have been apparent. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The official is deemed to be aware of the law.

■ I find that reasonable law enforcement officers in the circumstances of defendants Wirsing and Plizka would have known on October 7, 1989, that it was not constitutional for them to arrest plaintiffs for their display of the Plains Indian flag. Although *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, was a fairly recent opinion, it had been issued almost four months earlier and had received extensive media attention. Defendants Wirsing and Plizka may still be entitled to qualified immunity if they can prove that reasonable officers in their position would have believed reasonably that plaintiffs' symbolic expression, the display of the flag, was directed to inciting imminent lawless action and was likely to produce such a result. Speech loses its protected character when it is incendiary. *Brandenburg,* 395 U.S. 444, 89 S.Ct. 1827. Whether reasonable officers would have believed it was necessary to act in the specific circumstances that existed at the Round Lake landing on October 7, 1989 is a question that cannot be answered at

this stage of the proceedings. Although the general rule is that qualified immunity is to be determined prior to trial so as to spare public defendants the ordeal of trial when they are immune from liability, when there are disputed issues of material fact a pretrial determination is not possible. In this case, the parties dispute the nature of the violence at the landing at the time the flag was displayed. They agree that tensions were high in general and that there was potential for disturbances of the peace and even violence at the boat landing, but it is not clear whether or to what extent those conditions were related to the display of the Plains Indian flag. Moreover, it is not clear whether defendants can prove that plaintiffs' actions were directed to inciting imminent lawless action. Plaintiff Stone has averred that this was not his purpose, but his affidavit is somewhat conclusory on this point and it seems fair to allow defendants more discovery. I conclude that it is necessary to reserve a ruling on the issue of qualified immunity until after trial.

Defendants argue that the First Amendment's protections extend to the expressive use of the American flag only when it is being used to communicate a message about the nation or about nationhood and not when it is used, as it was here, to communicate a pride in being a Native American or the support of Indian fishing rights. They contend that plaintiffs' use of the flag gave their position the seeming approval of the federal government and that such a use is not constitutionally protected because it puts in jeopardy the integrity of the flag's symbolism. This argument reads *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, far too narrowly and it misreads plaintiffs' message as well. Plaintiffs' use of an American flag with a superimposed Plains Indian symbol can be read as expressing the message that Indians are part of the American nation and that fishing rights are federally secured. It can also be read as expressing the message that many Americans do not want to consider Indians as part of the nation and that many do not want to recognize the Indians' federal treaty rights. The idea that Americans do not enjoy "unity as a Nation" or that "the concepts reflected in the flag do not in fact

exist" are exactly what the Court found to be protected in *Texas v. Johnson,* 491 U.S. at 410, 109 S.Ct. at 2542.

■ Defendants raise the additional argument that it is irrelevant what the federal constitutional standard was because they were entitled to act in reliance on a state law that had never been held to be unconstitutional. In support of their position, they cite *Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), in which the Court held that an arrest made in good faith reliance on a presumptively valid ordinance is valid even if the ordinance is subsequently held to be unconstitutional. *DeFillippo* is distinguishable from this case. When DeFillippo was arrested, "there was no controlling precedent that [the] ordinance was or was not constitutional." *Id.* at 37, 99 S.Ct. at 2632. In this case, there was controlling precedent: the Supreme Court had held Washington's statute unconstitutional when applied to the mere display of an altered flag in the absence of any disturbance of the peace, *Spence v. Washington,* 418 U.S. 405, 94 S.Ct. 2727; the Washington statute was identical in all essential ways to the Wisconsin statute; and the Court had fleshed out and reaffirmed its holding by defining the very limited circumstances in which even the total destruction of the flag would be a justification for an arrest. *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533. There are occasions in which the contours of the law are not sufficiently established to enable a reasonable officer to know whether his conduct is legal, *Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. at 3039. This is not one of them. It is improbable that any lawyer looking at Wis.Stat. § 946.06(1)(b) in light of *Spence* and *Johnson* would have had any difficulty understanding the application of those two cases to the Wisconsin statute.

■ The purpose of qualified immunity is to protect government officials, including law enforcement officers, *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), by giving them the ability to predict when their actions will create liability for them. With this protection, "officials can know that they will not be held personally

liable as long as their actions are reasonable in light of current American law." *Anderson v. Creighton,* 483 U.S. at 646, 107 S.Ct. at 3042. The corollary is that when current American law makes it plain that certain actions are unconstitutional, the offending officer cannot escape liability. The only exception is if the officer can show "the existence of extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard." *Harlow v. Fitzgerald,* 457 U.S. at 819, 102 S.Ct. at 2738. Defendants have not asserted that any extraordinary circumstances were at play in this case.

*Liability of Price County and City of Ashland*

■ Plaintiffs assert that the municipal defendants are liable because Sheriff Wirsing possessed and embodied final policymaking authority with regard to law enforcement policy for Price County; the City of Ashland had a policy and custom of cooperating with Price County in policing spearfishing activity; therefore both the city and the county are liable for Sheriff Wirsing's directive to arrest the plaintiffs; the two arrests constituted a custom and policy. Plaintiffs' argument breaks down at the first step. Under state law, which is determinative, *Woods v. Michigan City, Ind.,* 940 F.2d 275, 279 (7th Cir. 1991); *Soderbeck v. Burnett County, Wis.,* 752 F.2d 285, 292 (7th Cir.1985), the sheriff is not a county policymaker, but a representative of the sovereignty of the *state. Soderbeck v. Burnett County, Wis. (Soderbeck II),* 821 F.2d 446, 451 (7th Cir.1987) (citing *Wisconsin Professional Police Assn. v. County of Dane,* 106 Wis.2d 303, 316 N.W.2d 656 (1982)). I conclude that defendants are entitled to summary judgment in their favor with respect to the claims against the City of Ashland and Price County and to the claims against defendants Wirsing and Plizka for actions taken in their official capacities, which are in essence claims against their municipal employers. *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985) (suit against a state official in his or her official capacity is not a suit against the official but against the official's office).

*Punitive damages and attorney's fees*

It would be premature to rule on the availability of punitive damages. However, I agree with defendants to the extent that if plaintiffs are unable to be more precise about the basis for their claim, they will have no basis for submitting a claim for punitive damages to the jury.

Defendants argue that they should not be liable for any award of attorney's fees because they were acting pursuant to a state statute that had not been held to be unconstitutional. Since I have held that the individual defendants should have known that it would be unconstitutional to arrest plaintiffs for violation of Wis.Stat. § 946.06(1)(b) except under certain specific circumstances, it may well be proper to assess attorney's fees against these defendants if plaintiffs prevail at trial.

### ORDER

IT IS ORDERED that defendants' motion for summary judgment is GRANTED with respect to plaintiffs' claims against defendants County of Price and City of Ashland; in all other respects, it is DENIED.