STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

Matthew C. JANSSEN, Defendant-Respondent.

Supreme Court

*No. 97–1316–CR. Oral argument April 9, 1998.—Decided June 25, 1998.*

(Also reported in 580 N.W.2d 260.)

For the plaintiff-appellant-petitioner the cause was argued by *Vincent R. Biskupic*, district attorney for Outagamie County, with whom on the briefs was *James E. Doyle*, assistant attorney general.

For the defendant-respondent there were briefs by *Eugene A. Bartman* and *Brian G. Figy*, Office of the State Public Defender, Appleton, with oral argument by *Eugene A. Bartman*.

Amicus curiae was filed by *Peter M. Koneazny, Carolyn M. Hagner* and *American Civil Liberties Union*, Milwaukee for the American Civil Liberties Union.

¶ 1. JON P. WILCOX, J. On June 14, 1777, the Continental Congress resolved "[t]hat the flag of the thirteen United States be thirteen stripes, alternate red and white: that the union be thirteen stars, white in a blue field, representing a new constellation." 8 *Journal of the Continental Congress* 1774–1789 at 464 (W. Ford ed. 1907). For the more than 220 years since that day, our "Stars and Stripes" has endured as one symbol that Americans may look to with quiet reflection upon who we are as a nation, what our ancestors have done for us, and what it is that we wish to accomplish for our future generations.

¶ 2. It should come as no surprise that in a country of such great pride, honor and tradition, disrespect

for the flag often leaves a bitter taste in the mouths of even the most tolerant among us.

> The American flag. . .has come to be the visible symbol embodying our Nation. It does not represent the views of any particular political party, and it does not represent any particular political philosophy. The flag is not simply another "idea" or "point of view" competing for recognition in the marketplace of ideas. Millions and millions of Americans regard it with an almost mystical reverence regardless of what sort of social, political, or philosophical beliefs they may have.

*Texas v. Johnson*, 491 U.S. 397, 429 (1989) (Rehnquist, C.J., dissenting). The flag is a world-wide symbol of freedom; it is symbolic of the sacrifices we have made in our lives as Americans, and for most of us, it deserves respect and honor.

¶ 3. Although the flag's significance to most Americans may be readily apparent, one critical and indispensable fact which may exist only in the most distant recesses of our internal thought process may not reveal itself so willingly: we must also honor and respect the United States Constitution by carrying out its commands. As a court, this is not only our primary function in this case, it is our only function.

¶ 4. This is a review of a published decision of the court of appeals, *State v. Janssen*, 213 Wis. 2d 471, 570 N.W.2d 746 (Ct. App. 1997), which affirmed an order of the circuit court for Outagamie County, John A. Des Jardins, Judge. The circuit court dismissed the state of Wisconsin's (State) charge of flag desecration against the defendant Matthew C. Janssen (Janssen). The flag

desecration statute, Wis. Stat. § 946.05 (1995–96),[1] provides:

> **946.05 Flag desecration. (1)** Whoever intentionally and publicly mutilates, defiles, or casts contempt upon the flag is guilty of a Class E felony.
>
> **(2)** In this section "flag" means anything which is or purports to be the Stars and Stripes, the United States shield, the United States coat of arms, the Wisconsin state flag, or a copy, picture, or representation of any of them.

¶ 5. We are presented with two issues upon review: (1) is Wis. Stat. § 946.05(1), on its face, unconstitutionally overbroad; and (2) if so, can the constitutionality of § 946.05(1) be preserved by a limiting construction of the statute or by severing any of its unconstitutional provisions? We hold first that § 946.05(1) is unconstitutionally overbroad on its face,[2] and second, that its overbreadth may not be cured by a limiting construction or by severing any of the statute's unconstitutional provisions. Accordingly, we affirm the decision of the court of appeals.[3]

---

[1] All future statutory references are to the 1995–96 volume of the statutes unless otherwise noted.

[2] The State presents only one issue for our review: can the constitutionality of Wis. Stat. § 946.05(1) be preserved by an appropriate limiting construction or by severing any of its unconstitutional provisions? In doing so, the State concedes that portions of § 946.05(1) are unconstitutional, and instead chooses to focus on severability. Nevertheless, we begin with an overbreadth analysis of the statute in order to promote a full understanding of our holding.

[3] On January 7, 1998, Janssen filed a motion in this court to strike from the State's brief and appendix an affidavit which does not appear in the appellate record. This court held the motion in abeyance pending the court's consideration of the

¶ 6. The facts relevant to our decision are not in dispute. Beginning in May or June of 1996, Janssen and several of his friends began stealing United States flags from different locations in the city of Appleton, Wisconsin. One of the first thefts occurred when the group passed through the Reid Municipal Golf Course one evening and decided to take the flag down from the golf course flag pole. After stealing the flag, Janssen eventually discarded it.

¶ 7. On approximately June 9, 1996, Janssen and his friends returned to the golf course and noticed that a new flag had been hung on the flag pole. After lowering and removing the flag, Janssen defecated on the flag and left it on the steps to the golf course clubhouse. Janssen and his friends did not return until approximately June 26, 1996.

¶ 8. At that time, Janssen and his friends returned to the golf course to find that the flag had been cleaned and put back on the flag pole. Once again, Janssen and his friends lowered and stole the flag. This time, however, the group left a handwritten note at the golf course, which was eventually recovered by the Appleton Police Department.

¶ 9. The note read as follows:

Golf Course Rich Fucks:

When are you dumb fucks going to learn? We stole you're [sic] first flag and burnt [sic] it, then we used your second flag for a shit-rag and left it on your

merits on appeal; we now conclude that the affidavit must be stricken. We have consistently held that we cannot consider affidavits which were not part of the record, *see, e.g., Howard v. Duersten*, 81 Wis. 2d 301, 307, 260 N.W.2d 274 (1977) (and cases cited therein), and we adhere to that rule today. Accordingly, Janssen's motion to strike the affidavit is hereby granted.

doorstep with a peice [sic] of shit. The ANARCHIST PLATOON HAS INVADED Appleton and as long as you put flags up were [sic] going to burn them you yuppie fucks. Shove you're [sic] cluB [sic] up your ass.

¶ 10. Approximately one month later, Janssen was arrested by the Appleton Police Department. Upon his arrest, Janssen confessed to various flag thefts in the city of Appleton, including those at the Reid Municipal Golf Course. Janssen also confessed to defecating on the flag. As a result of his confessions, he was charged with two counts of theft, and one count of "intentionally and publicly defil[ing] the United States flag."

¶ 11. On February 5, 1997, the circuit court held a hearing to address Janssen's motion to dismiss the flag desecration charge on grounds that his act of defecating on the flag was constitutionally protected expression. See U.S. Const. amend. I.[4] At this hearing, the circuit court concluded that the handwritten note—though it "brings into focus an expressive communication of protest, dislike, alienation against the establishment, government, and other institutions in society"—was in this case "not tied to the actual act of defecation on the flag" since it was left some 17 days after the defecation had occurred. Record on Appeal, 37:32 (Motion Hearing, February 5, 1997). Accordingly, the circuit court held that defecating on the flag, by itself, was not constitutionally protected expressive

---

[4] The First Amendment states that "Congress shall make no law. . .abridging the freedom of speech. . . ." It applies to the states via the Fourteenth Amendment. See Bigelow v. Virginia, 421 U.S. 809, 811 (1975); Schneider v. New Jersey, 308 U.S. 147, 160 (1939).

communication within the meaning of the First Amendment and *Texas v. Johnson*, 491 U.S. 397.

¶ 12. On March 13, 1997, following an additional hearing to address the issues of overbreadth and vagueness, the circuit court entered an order dismissing the count of flag desecration on grounds that Wis. Stat. § 946.05(1) is unconstitutionally vague and overbroad on its face.

¶ 13. Upon the State's appeal, Janssen presented three arguments in his defense: (1) Wis. Stat. § 946.05(1) is unconstitutionally vague on its face; (2) § 946.05(1) is unconstitutionally overbroad on its face; and (3) § 946.05(1) is unconstitutional as applied to Janssen, because his conduct in this case constituted expression which is protected by the First Amendment. *See Janssen*, 213 Wis. 2d at 476.

¶ 14. The court of appeals first concluded that Janssen lacked standing to assert a vagueness challenge against Wis. Stat. § 946.05(1) because a reasonable person could not have any doubt that defecating on the flag falls within the statutory prohibition against defiling the flag.[5] *See id.* at 477. After examining the relevant United States Supreme Court precedent, the court of appeals then concluded that § 946.05(1) is overbroad because it makes illegal acts which the Court has deemed to be protected expression

---

[5] Even if he did have standing, the court of appeals concluded that Janssen's vagueness challenge would fail because the word "defile" has a specific and well understood meaning. *See State v. Janssen*, 213 Wis. 2d 471, 477, 570 N.W.2d 746 (Ct. App. 1997). Additionally, although Janssen was not charged under the portion of Wis. Stat. § 946.05(1) which makes it unlawful to "cast[ ] contempt upon the flag," the court of appeals concluded that the "casts contempt" portion of the statute is unconstitutionally vague. *See id.* at 477–78.

within the meaning of the First Amendment. *See id.* at 480. Finally, the court of appeals declined to fashion a limiting construction of § 946.05(1)'s language or to sever any of its unconstitutional provisions because neither the language of the statute itself, nor the legislative history supported the State's suggested constructions of the statute. *See id.* at 481–82.

¶ 15. Having affirmed the circuit court's order on these grounds, the court of appeals did not address Janssen's argument that his act of defecating on the flag was expression protected by the First Amendment. *See id.* at 476. We granted the State's petition for review on November 20, 1997, and now affirm.[6]

## STANDARD OF REVIEW

¶ 16. Janssen's challenge to the constitutionality of Wis. Stat. § 946.05(1), and the State's corresponding attempt to preserve § 946.05(1), present questions of law which we review de novo, without deference to the conclusions of the circuit court or the court of appeals. *See Wisconsin Retired Teachers Ass'n v. Employe Trust Funds Bd.*, 207 Wis. 2d 1, 17–18, 558 N.W.2d 83 (1997).

¶ 17. Ordinarily, a statute is presumed constitutional, and the party seeking to overcome the presumption must prove the statute unconstitutional beyond a reasonable doubt. *See id.* at 18. The burden

---

[6] Because we affirm on grounds of overbreadth, we need not address, and indeed express no opinion on, Janssen's arguments that Wis. Stat. § 946.05(1) is unconstitutionally vague and that Janssen's act of defecating on the United States flag is "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments. . . ." *Spence v. Washington*, 418 U.S. 405, 409 (1974).

shifts to the proponent of the statute, however, where the statute infringes on the exercise of First Amendment rights. *See State v. Thiel,* 183 Wis. 2d 505, 522–523, 515 N.W.2d 847 (1994); *City of Madison v. Baumann,* 162 Wis. 2d 660, 668–69, 470 N.W.2d 296 (1991). In this case, the State concedes that Wis. Stat. § 946.05(1), at least in part, infringes upon First Amendment rights. Therefore, the burden is on the State to establish the statute's constitutionality.

### THE OVERBREADTH DOCTRINE

¶ 18. In his overbreadth analysis, Janssen argues that Wis. Stat. § 946.05(1) is unconstitutional not because his act of defecating on the United States flag is protected expression within the meaning of the First Amendment, but because the statute may conceivably be applied unconstitutionally to others in situations not before this court. Courts generally look disfavorably upon such challenges, because "constitutional rights are personal and may not be asserted vicariously." *Broadrick v. Oklahoma,* 413 U.S. 601, 610 (1973).[7]

¶ 19. In the First Amendment arena, however, courts have altered their traditional rules of standing to permit "attacks on overly broad statutes without requiring that the person making the attack demonstrate that in fact his specific conduct was protected." *Bates v. State Bar of Arizona,* 433 U.S. 350, 380 (1977).

---

[7] As the *Broadrick* court explained, "[t]hese principles rest on more than the fussiness of judges. They reflect the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws." *Broadrick v. Oklahoma,* 413 U.S. 601, 610–11 (1973).

*See also City of Milwaukee v. Wilson*, 96 Wis. 2d 11, 19, 291 N.W.2d 452 (1980) ("In order to assert a claim of constitutional overbreadth, it is not necessary that the defendant's own conduct be constitutionally protected."). This overbreadth exception is predicated on the critical importance of First Amendment rights in our society. *See, e.g.*, Richard H. Fallon, Jr., *Making Sense of Overbreadth*, 100 Yale L.J. 853, 884 (1991) ("As philosophers and legal theorists have demonstrated, the First Amendment protects rights that are valued for their relationship both to our concept of autonomous personhood and to our democratic form of government.") (citations omitted).

¶ 20. "The use of overbreadth analysis reflects the conclusion that the possible harm to society from allowing unprotected speech to go unpunished is outweighed by the possibility that protected speech will be muted." *Bates*, 433 U.S. at 380. Overbroad statutes may undesirably dissuade persons from exercising their rights by "chilling" their protected speech or expression. *See New York v. Ferber*, 458 U.S. 747, 768 (1982); *Bates*, 433 U.S. at 380; *Broadrick*, 413 U.S. at 612.[8]

¶ 21. Thus, we are more likely to review the constitutionality of a sweeping statute on overbreadth

---

[8] The overbreadth doctrine also serves to prevent selective enforcement of a statute against unpopular causes, *see Spence*, 418 U.S. at 414 n.9; *NAACP v. Button*, 371 U.S. 415, 433 (1963), and to give legislatures more "incentive to stay within constitutional bounds in the first place." *Massachusetts v. Oakes*, 491 U.S. 576, 586 (1989) (Scalia, J., concurring in part and dissenting in part). For a thorough review of the overbreadth doctrine, see Richard H. Fallon, Jr., *Making Sense of Overbreadth*, 100 Yale L.J. 853 (1991); Note, *The First Amendment Overbreadth Doctrine*, 83 Harv. L. Rev. 844 (1970).

grounds than on an "as-applied" theory because "a chill on protected activity also means deterrence of the very litigants whose complaint is necessary under the as applied method to bring about erosion of overbreadth. The results are delay in according judicial protection and irretrievable loss of exercise of fundamental rights." Note, *The First Amendment Overbreadth Doctrine*, 83 Harv. L. Rev. 844, 855 (1970).

¶ 22. The overbreadth doctrine does not, however, give a court unfettered discretion to invalidate statutes in their entirety. Because application of the doctrine is "strong medicine," it is to be "employed by the Court sparingly and only as a last resort." *Broadrick*, 413 U.S. at 613. Particularly where, as here, conduct and not merely speech is involved, the overbreadth of a statute must be both "real" and "substantial," "judged in relation to the statute's plainly legitimate sweep." *Id.* at 615. *See also Thiel*, 183 Wis. 2d at 521. Stated differently, we will not invalidate the flag desecration statute "because in some conceivable, but limited, circumstances the regulation might be improperly applied." *City of Milwaukee v. K.F.*, 145 Wis. 2d 24, 40, 426 N.W.2d 329 (1988).[9]

¶ 23. We now turn our attention to Wis. Stat. § 946.05(1) to determine whether it is substantially overbroad, so as to render it facially invalid.

---

[9] The requirement of substantial overbreadth is tied to the "chilling effect" rationale: "While a sweeping statute, or one incapable of limitation, has the potential to repeatedly chill the exercise of expressive activity by many individuals, the extent of deterrence of protected speech can be expected to decrease with the declining reach of the regulation." *New York v. Ferber*, 458 U.S. 747, 772 (1982).

## OVERBREADTH OF WIS. STAT. § 946.05(1)

¶ 24. "A statute is overbroad when its language, given its normal meaning, is so sweeping that its sanctions may be applied to constitutionally protected conduct which the state is not permitted to regulate." *Bachowski v. Salamone*, 139 Wis. 2d 397, 411, 407 N.W.2d 533 (1987). We have little doubt that Wis. Stat. § 946.05(1) is unconstitutionally overbroad. To explain why, we proceed to define the boundaries of constitutionally protected flag desecration, knowing that parties making overbreadth challenges may hypothesize situations in which the challenged legislation would intrude upon the First Amendment rights of third parties. *See K.F.*, 145 Wis. 2d at 40.

¶ 25. Because the State asks this court to sever all but the term "defiles" from Wis. Stat. § 946.05(1), we first illustrate briefly the real and substantial overbreadth of the statute's "casts contempt upon" and "mutilates" language. We then consider the constitutionality of a statute that merely prohibits "defile[ment]" of the United States flag.

### "CASTS CONTEMPT UPON"

¶ 26. In *Street v. New York*, 394 U.S. 576 (1969), the defendant, Street, was convicted of a New York law which made it a misdemeanor to "publicly mutilate, deface, defile, or defy, trample upon, or cast contempt upon either by words or act [any United States flag]." *Id.* at 577–78. After hearing a news report that civil rights leader James Meredith had been shot by a sniper in Mississippi, the defendant walked outside to a city intersection, stood on the corner and burned the flag. While doing so, he disparaged the flag by shouting "we don't need no damn flag," and "if they let that

happen to Meredith we don't need an American flag."
*Id.* at 578–79.

¶ 27. Reserving the question of whether Street's conviction for burning the flag was constitutionally permissible, the Court held that the New York law had been unconstitutionally applied to Street because it permitted him to be punished merely for speaking defiant or contemptuous words about the flag. *See id.* at 580–81. In so holding, the Court stated:

> We have no doubt that the constitutionally guaranteed "freedom to be intellectually. . .diverse or even contrary," and the "right to differ as to things that touch the heart of the existing order," encompass the freedom to express publicly one's opinions about our flag, including those opinions which are defiant or contemptuous.

*Id.* at 593 (citations omitted).

¶ 28. Wisconsin Stat. § 946.05(1) expressly prohibits the very conduct which was held to be protected by the First Amendment in *Street*. Its "casts contempt upon" language encompasses any speech that is defiant or contemptuous of, or which expresses distaste for the flag. In fact, this portion of the statute casts its jaundiced eye with such reprobation as to reveal that the only interest being served is the proscription of expressive communication.[10]

---

[10] As the State also concedes, the "casts contempt upon" language is constitutionally infirm on vagueness grounds. *See generally Smith v. Goguen*, 415 U.S. 566 (1974) (holding provision of Massachusetts flag misuse statute that subjects to criminal liability anyone who "publicly. . .treats contemptuously the flag of the United States" void for vagueness under the due process clause).

## "MUTILATES"

¶ 29. Some twenty years after *Street*, the Supreme Court again had occasion to assess the constitutional validity of a flag desecration statute. *See Johnson*, 491 U.S. 397. In *Johnson*, the Court was faced with the questions it had explicitly left unaddressed in *Street*: (1) whether the act of burning the flag is "sufficiently imbued with elements of communication," *Spence v. Washington*, 418 U.S. 405, 409 (1974), so as to warrant First Amendment protection; and (2) to what extent that act could be regulated by the government.

¶ 30. The defendant, Johnson, participated in a political demonstration and march to protest, among other things, the policies of the Reagan administration. *See Johnson*, 491 U.S. at 399. When the protesters arrived at the Dallas City Hall, Johnson doused a United States flag with kerosene and set it on fire. *See id.* Johnson's acts led to his arrest and conviction for desecration of a venerated object pursuant to Texas law, which made it a misdemeanor to "deface, damage, or otherwise physically mistreat" a national flag "in a way that the actor knows will seriously offend one or more persons likely to observe or discover his action." *Id.* at 400 n.1.

¶ 31. Under the circumstances presented in Johnson's case, the Court concluded that Johnson's burning of the flag constituted expressive communication which implicated the First Amendment. *See id.* at 406. After rejecting Texas' two asserted interests in regulating this expression—preventing breaches of the peace and preserving the flag as a symbol of nationhood and national unity—the Court upheld the reversal of Johnson's conviction. *See id.* at 420. In doing so, the Court stated, "[w]e do not consecrate the flag by

punishing its desecration, for in doing so we dilute the freedom that this cherised emblem represents." *Id.*

¶ 32. This decision was reaffirmed a year later when the Court held that the Flag Protection Act of 1989, an act passed in the wake of the *Johnson* decision, was unconstitutionally applied to defendants charged with burning the flag. *See United States v. Eichman*, 496 U.S. 310 (1990). Similar to the statute at issue in *Johnson*, the Flag Protection Act provided for fines and imprisonment of anyone who "knowingly mutilates, defaces, physically defiles, burns, maintains on the floor or ground, or tramples upon any flag of the United States." *Id.* at 314.

¶ 33. The Court stated:

> Although Congress cast the Flag Protection Act of 1989 in somewhat broader terms than the Texas statute at issue in *Johnson*, the Act still suffers from the same fundamental flaw: It suppresses expression out of concern for its likely communicative impact.
>
> . . .
>
> Government may create national symbols, promote them, and encourage their respectful treatment. But the Flag Protection Act of 1989 goes well beyond this by criminally proscribing expressive conduct because of its likely communicative impact.

*Id.* at 317–18.

¶ 34. Wisconsin Stat. § 946.05(1), as it is written, suffers from the same flaws that were present in *Johnson* and *Eichman*. Its language barring persons from "mutilating" the flag would make criminally punishable flag burning, tearing or cutting during a political protest, rally, or any other medium in which that person wishes to convey a message by doing

so—expression which is explicitly protected by the First Amendment.[11] We are confident in our prediction that fear of prosecution under this portion of the statute is likely to dissuade the citizens of this state from expressing themselves in a constitutionally protected manner.

¶ 35. The State argues that the real and substantial overbreadth of Wis. Stat. § 946.05(1) that is evidenced by the "mutilates" and "casts contempt upon" language may be cured by eliminating these two phrases altogether. According to the State, if the word "defiles" alone is left in place, the flag desecration statute may be preserved. We disagree, and proceed to explain why § 946.05(1) would remain unconstitutionally overbroad on its face if it simply prohibited "defile [ment]" of the United States flag.

## SEVERABILITY PRINCIPLES

██

¶ 36. Statutes that are challenged as overbroad may be preserved if a limiting and validating construction of the statute's language is readily available. Courts may also sever the unconstitutional provisions of the statute, leaving the remainder of the legislation

---

[11] Of course, certain conditions must be met before one's conduct becomes "sufficiently imbued with elements of communication," *Spence*, 418 U.S. at 409, as to fall within the First Amendment's protective embrace. *See Texas v. Johnson*, 491 U.S. 397, 404 (1989) (courts must examine the context in which the conduct occurred and ask whether "an intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it") (quoting *Spence*, 418 U.S at 410–11). We assume here, as we assume in all hypotheticals in this opinion, that these conditions have been met.

intact and in full effect. *See Thiel*, 183 Wis. 2d at 521, 522 (citing Fallon, 100 Yale L. Rev. at 886); *see also Broadrick*, 413 U.S. at 613 ("[A]ny enforcement of a statute thus placed at issue is totally forbidden until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.").

¶ 37. "Whether an unconstitutional provision is severable from the remainder of the statute in which it appears is largely a question of legislative intent, but the presumption is in favor of severability." *Regan v. Time, Inc.*, 468 U.S. 641, 653 (1984). "Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Id.* (quoting *Buckley v. Valeo*, 424 U.S. 1, 108 (1976)).

¶ 38. These general rules of construction have been codified in Wisconsin by Wis. Stat. § 990.001(11), which provides in relevant part:

> **990.001 Construction of laws; rules for.** In construing Wisconsin laws the following rules shall be observed unless construction in accordance with a rule would produce a result inconsistent with the manifest intent of the legislature:
>
> . . .
>
> **(11)** *Severability.* The provisions of the statutes are severable. . . .If any provision of the statutes or of a session law is invalid, or if the application of either to any person or circumstance is invalid, such invalidity shall not affect other provisions or applications which can be given effect without the invalid provision or application.

379

■

¶ 39. Therefore, in our attempt to sever or find a limiting construction of Wis. Stat. § 946.05(1), we examine the language of the statute as well as its legislative history to determine whether the legislature intended the statute to be applied in its newly-construed form. *See Milwaukee v. Wroten*, 160 Wis. 2d 207, 227, 466 N.W.2d 861 (1991).

### THE LANGUAGE OF WIS. STAT. § 946.05(1)

¶ 40. Consistent with the command of Wis. Stat. § 990.001(11), we presume that the legislature intended Wis. Stat. § 946.05(1) to survive with the term "defiles" on its own. Despite our construction, the statute remains unconstitutionally overbroad. The word "defile" is defined as "to make filthy or dirty; to debase the pureness or excellence of; to profane or sully; to make unclean or unfit for ceremonial use; desecrate; to violate the chastity of." *The American Heritage Dictionary of the English Language* 489 (3d ed. 1992).[12]

---

[12] The *Eichman* court utilized a similar definition of the word "defile" when examining the Flag Protection Act of 1989. *See United States v. Eichman*, 496 U.S. 310, 317 n.7 (citing *Webster's Third New International Dictionary* 592 (1976)).

Although these accepted definitions of "defile" would appear to encompass conduct which also forms the basis for liability under Wis. Stat. § 946.06, Wisconsin's "improper use" statute, we express no opinion on the constitutionality of that statute. *See* Wis. Stat. § 946.06. *Cf. Spence*, 418 U.S. 405 (holding Washington's similarly worded "improper use" statute unconstitutional as applied to college student who affixed peace symbol to the flag); *Koser v. County of Price*, 834 F. Supp. 305, 309 (W.D. Wis. 1993) (noting that, in light of *Spence* and *Johnson*, it was unconstitutional for officers to arrest individuals

¶ 41. This accepted definition of the term "defile" illustrates the potential reach of Wis. Stat. § 946.05(1) even after severance of the majority of its substantive provisions. Under this definition, one could be prosecuted for any expressive act which makes the flag unclean for ceremonial use or which violates the chastity of the flag. It would proscribe, for example, a college student's decision to protest our government's foreign policy by affixing a peace symbol to both sides of the flag with removable black tape. The United States Supreme Court has held that such activity enjoys First Amendment protection. *See Spence*, 418 U.S. at 415.

¶ 42. One might also defile the flag when conveying a message by dyeing, painting or writing upon the flag for artistic purposes. Under the appropriate circumstances, we are again confident that Wis. Stat. § 946.05(1) could not be applied constitutionally to such activity. *Cf. United States ex rel. Radich v. Criminal Court of New York City*, 385 F. Supp. 165 (1974) (holding that New York statute barring one from "casting contempt" on the flag was unconstitutionally applied to defendant who displayed an art exhibit which used the flag in an antiwar theme). In short, any time a person expresses an opinion by defiling a flag—whether by attaching a symbol to the flag which makes it "unfit for ceremonial use" or renders it "filthy or dirty," or by spilling a foreign substance on the flag and thereby "debasing its pureness"—§ 946.05(1) could be used to punish that person unconstitutionally.

¶ 43. In our assessment, the Supreme Court's holdings in *Johnson* and *Eichman* command this conclusion. Certainly if one is protected by the First Amendment when he or she conveys a message by

under § 946.06(1)(b) who publicly displayed a United States flag on which a picture of a Plains Indian was superimposed).

381

burning, tearing or otherwise mutilating the flag during a political protest or rally, he or she would also be protected for the less destructive act of "defiling" the flag under equivalent circumstances. If one were to splatter the flag with oil during a demonstration against the Persian Gulf War—a clear act of "defilement" under any interpretation of the term—we fail to see how this person could be prosecuted constitutionally under Wis. Stat. § 946.05(1) when his or her fellow protester who chose to burn the flag could not.

¶ 44. The State argues that a construction of the word "defile" which limits it to purely physical acts which make the flag physically unclean or dirty would preserve the constitutionality of Wis. Stat. § 946.05(1). We disagree. None of the above-recited examples of protected expression would fall outside the scope of § 946.05(1) as the State would have us construe the term "defile." Although such a construction could save a defilement statute from a potential vagueness challenge, *see Commonwealth v. Morgan*, 331 A.2d 444, 446 (Pa. 1975), it does little to address the statute's effect upon the many conceivable forms of expression which involve intentional defilement of the flag.[13]

---

[13] We note that a construction which by its very language limits the statute's application to speech and conduct that is not protected by the First Amendment is both impractical and constitutionally suspect. *See* Laurence H. Tribe, *American Constitutional Law* § 12–29, at 1031 (2d ed. 1988). Tribe notes that such a statute "is guaranteed not to be overbroad since, by its terms, it literally forbids nothing that the Constitution protects. . . .The problem with that solution is that it simply exchanges overbreadth for vagueness." *Id.*

## LEGISLATIVE HISTORY

¶ 45. Legislative history is of little comfort to the State's argument. Wisconsin Stat. § 946.05 finds its roots in a 1901 statute. *See* 1901 Wis. Laws, ch. 142; *see also* Wis. Stat. ch. 185, §§ 4575(h)–(k) (Sanborn & Sanborn's Annot. Stats. 1899–1906).[14] Since then, it

---

[14] With the first state flag desecration statutes being enacted in 1897, Wisconsin's 1901 statute made it one of the first to regulate the proper treatment and use of the United States flag. *See* Note, *Flag Burning, Flag Waving and the Law*, 4 Val. U. L. Rev. 345 app. (1970) (compilation of state flag desecration statutes). Currently, every state in the Union, with the exception of Alaska, has a statute banning flag desecration. *See* Ala. Code § 13A–11–12 (1994); Ariz. Rev. Stat. Ann. § 13–3703 (West 1989); Ark. Code Ann. § 5–51–207 (Michie 1997); Cal. Mil. & Vet. Code § 614 (West 1988); Colo. Rev. Stat. § 18–11–204 (1997); Conn. Gen. Stat. Ann. § 53–258a (West 1997); Del. Code Ann. tit. 11, § 1331 (1995); Fla. Stat. Ann. §§ 256.06, 876.52 (West 1994); Ga. Code Ann. § 50–3–9 (1994); Haw. Rev. Stat. Ann. § 711–1107 (Michie 1993); Idaho Code § 18–3401 (1997); 720 Ill. Comp. Stat. 620/1 (West 1993); Ind. Code Ann. § 35–45–1–4 (West 1998); Iowa Code Ann. § 718A.1 (West 1993); Kan. Stat. Ann. § 21–4111 (1995); Ky. Rev. Stat. Ann. § 525.110 (Banks-Baldwin Supp. 1996); La. Rev. Stat. Ann. § 14:116 (West 1997); Me. Rev. Stat. Ann. tit. 1, § 254 (West 1989); Md. Ann. Code art. 27, § 83 (1996); Mass. Gen. Laws ch. 264, § 5 (1996); Mich. Comp. Laws Ann. § 750.246 (West 1991); Minn. Stat. § 609.40 (1996); Miss. Code Ann. § 97–7–39 (1994); Mo. Ann. Stat. § 578.095 (West 1995); Mont. Code Ann. § 45–8–215 (1996); Neb. Rev. Stat. § 28–928 (1995); Nev. Rev. Stat. Ann. § 201.290 (Michie 1997); N.H. Rev. Stat. Ann. § 646-A:1–2 (1996); N.J. Stat. Ann. § 2C:33–9 (West 1995); N.M. Stat. Ann. § 30–21–4 (Michie 1994); N.Y. Gen. Bus. Law § 136 (McKinney 1988); N.C. Gen. Stat. § 14–381 (1993); N.D. Cent. Code § 12.1–07–02 (1997); Ohio Rev. Code Ann. § 2927.11 (Banks-Baldwin 1997); Okla. Stat. Ann. tit. 21, § 372 (Supp.

has been repealed and recreated, *see* 1919 Wis. Laws, ch. 113,[15] and renumbered several times. *See, e.g.,*

1998); Or. Rev. Stat. § 166.075 (1997); 18 Pa. Cons. Stat. § 2102 (1995); R.I. Gen. Laws § 11–15–2 (1994); S.C. Code Ann. § 16–17–220 (Law. Co-op. 1985); S.D. Codified Laws § 22–9–1 (Michie Supp. 1997); Tenn. Code Ann. § 39–17–311 (1997); Tex. Penal Code Ann. § 42.11 (West 1994); Utah Code Ann. § 76–9–601 (1995); Vt. Stat. Ann. tit. 13, § 1903 (1974); Va. Code Ann. § 18.2–488 (Michie 1996); Wash. Rev. Code Ann. § 9.86.030 (West 1998); W. Va. Code § 61–1–8 (1997); Wyo. Stat. Ann. § 8–3–110 (Michie 1997). Only two reported decisions have addressed the constitutionality of a state flag desecration statute since the *Johnson* and *Eichman* decisions. *See Commonwealth v. Bricker,* 666 A.2d 257 (Pa. 1995) (holding Pennsylvania statute unconstitutional as applied, but constitutional on its face); *State v. Jimenez,* 828 S.W.2d 455 (Tex. Ct. App. 1992) (holding Texas statute unconstitutional). For a historical treatment of state flag desecration statutes and their use, see Robert Justin Goldstein, *The Great 1989–1990 Flag Flap: An Historical, Political, and Legal Analysis,* 45 U. Miami L. Rev. 19 (1990); Albert M. Rosenblatt, *Flag Desecration Statutes: History and Analysis,* 1972 Wash. U. L.Q. 193, 196–97 (1972).

The first federal flag legislation appeared in 1917: an "improper use" statute which applied only to the District of Columbia. *See* Michael W. Hoge, *Recent Development,* 50 Wash. L. Rev. 169, 176 n.43 (1974). *See also* D.C. Code Ann. § 22–3414 (repealed 1947). The first federal legislation to apply nationwide did not appear until 1968. *See* 18 U.S.C. § 700 (Supp. IV 1968); Hoge, 50 Wash. L. Rev. at 176 n.43; Note, 4 Val. U. L. Rev. app. at 362. It was amended in 1989 following the *Johnson* decision and remains on the books to this day. *See* 18 U.S.C. § 700 (1994).

[15] The statute was undoubtedly recreated to mirror the Uniform Flag Law, approved in 1917 by the National Conference of Commissioners on Uniform State Laws. *See* Rosenblatt, 1972 Wash. U. L.Q. at 196–97. *Compare* Wis. Laws, ch. 113 (1919)

1925 Wis. Laws, ch. 4; 1955 Wis. Laws, ch. 696. In 1967, an amendment increased the penalty for flag desecration from a misdemeanor to a felony. *See* 1967 Wis. Laws, ch. 241.

¶ 46. The revision of the criminal code in 1955, which moved the statute to its present location at Wis. Stat. § 946.05, provides the sole insight into the legislature's intent. In a 1953 Judiciary Committee Report on the Criminal Code prepared by the Wisconsin Legislative Council, a comment is attached to the flag desecration statute. *See* 5 *Judiciary Committee Report on the Criminal Code* 168 (February 1953). The comment reads:

> This section penalizes a person who intentionally and publicly mutilates, defiles or casts contempt upon the flag. *"Intentionally. . .mutilates, defiles or casts contempt upon" implies something grossly contemptuous.* It does not include, without more, a refusal on religious grounds to salute the flag. See *Johnson v. State,* 204 Ark. 476, 163 S. W. 2d 153 (1942); *Miller v. State,* 75 Okla. Crim. 428, 133 P. 2d 223 (1943). "Publicly" is used in the sense of "in public"; it requires more than merely doing the prohibited acts in the presence of another person. See *State v. Peacock,* 138 Me. 339, 25 A. 2d 491 (1942).

*Id.* (emphasis added).

¶ 47. This comment illustrates that the legislature intended to prohibit "grossly contemptuous" conduct only—a clear attempt to ban speech and conduct based on its expressive content. Such an approach runs contrary to now well-established principles of First Amendment law. *See, e.g., Johnson,* 491 U.S. at

*with* Uniform Flag Statute (reprinted in Rosenblatt, 1972 Wash. U. L.Q. at 196–97 n.22).

414 ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."); *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) ("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.").

¶ 48. The legislature's stated intent satisfies us that a prolonged search for a constitutionally-rehabilitated version of Wis. Stat. § 946.05(1)—whether by limiting construction or severance—would be in vain. "Although this court will strive to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of a statute." *State v. Hall*, 207 Wis. 2d 54, 82, 557 N.W.2d 778 (1997). *See also Scales v. United States*, 367 U.S. 203, 211 (1961). No matter what a limiting construction or severance of § 946.05(1) may produce, the clear intent of the legislature is to proscribe all speech or conduct which is grossly offensive and contemptuous of the United States flag. Therefore, *any* version of the current statute would violate fundamental principles of First Amendment law both in explicit wording and intent.

¶ 49. The State argues that we need not strike the statute down in its entirety because there are instances in which a person may be prosecuted under Wis. Stat. § 946.05(1) in a manner that is consistent

with the dictates of the First Amendment.[16] According to the State, this court should focus more on "real examples" of overbreadth, and less on hypothetical situations in which the statute could not be applied constitutionally. Janssen counters by asserting that any physical desecration of the flag constitutes expression within the meaning of the First Amendment.

¶ 50. In our assessment, the real and substantial overbreadth of Wis. Stat. § 946.05(1) provides a response to both arguments. As we have shown, the broad language of the statute casts an inescapable shadow upon protected expression which utilizes the United States flag, even if the extent of its proscription were confined to defilement of the flag. Although there may be constitutionally permissible applications of § 946.05(1), the number of instances in which the law could be applied to unprotected behavior is small in comparison to the number of instances in which it may be applied to expression protected by the First Amendment. "[J]udged in relation to its plainly legitimate

---

[16] Several hypotheticals were discussed at oral argument in this case, including the oft-quoted footnote three of the *Johnson* decision, in which the Court noted that the Texas statute at issue in that case might apply to conduct that is not protected by the First Amendment. The Court noted:

> A tired person might, for example, drag a flag through the mud, knowing that this conduct is likely to offend others, and yet have no thought of expressing any idea; neither the language nor the Texas courts' interpretations of the statute precludes the possibility that such a person would be prosecuted for flag desecration. Because the prosecution of a person who had not engaged in expressive conduct would pose a different case, and because this case may be disposed of on narrower grounds, we address only Johnson's claim that § 42.09 as applied to political expression like his violates the First Amendment.

*Johnson*, 491 U.S. at 403 n.3.

sweep," § 946.05(1) is sufficiently overbroad as to require its invalidation. *Broadrick*, 413 U.S. at 615.

¶ 51. Our approach, however, does not require that we endorse Janssen's "all flag desecration is protected expression" argument.[17] We leave for another day the question of whether an appropriately drafted flag desecration statute might be applied constitutionally to certain non-expressive conduct, recognizing that the United States Supreme Court has suggested that such possibilities exist. *See generally Eichman*, 496 U.S. 310; *Johnson*, 491 U.S. 397.

¶ 52. In sum, we hold that Wis. Stat. § 946.05(1) is overbroad and therefore unconstitutional on its face. Because the State has not satisfied its burden of proving that a limiting construction or severance of the statute's terms can preserve the statute in a constitutional form, § 946.05(1) must be invalidated in its entirety.

¶ 53. Having reached this conclusion, we pause to note the extreme difficulty inherent in writing a decision such as this. Ordinarily, the members of this

---

[17] Several commentators have advanced different versions of this argument. *See, e.g.*, Steven G. Gey, *This is Not a Flag: The Aesthetics of Desecration*, 1990 Wis. L. Rev. 1549 (1990) (asserting that it will never be possible to formulate a "content-neutral" flag desecration law because the flag is a pure symbol and any interaction with it is symbolic speech); Gregory Herbert, Note, *Waiving Rights and Burning Flags: The Search for a Valid State Interest in Flag Protection*, 25 Harv. C.R.-C.L. L. Rev. 591 (1990) (arguing that no flag protection legislation could be constitutional). *Cf.* Geoffrey R. Stone, *Flag Burning and the Constitution*, 75 Iowa L. Rev. 111 (1989) (concluding that it might be possible to draft legislation that prohibits flag burning without running afoul of the First Amendment).

court would call upon that core zone of personal restraint we carry deep within us as justices in order to refrain from such a diversion, but today is different. Today we share in the thoughtful and well-expressed sentiments of Justice Kennedy:

> The hard fact is that sometimes we must make decisions we do not like. We make them because they are right, right in the sense that the law and the Constitution, as we see them, compel the result. And so great is our commitment to the process that, except in the rare case, we do not pause to express distaste for the result, perhaps for fear of undermining a valued principle that dictates the decision. This is one of those rare cases.

*Johnson*, 491 U.S. at 420–21 (Kennedy, J., concurring).

¶ 54. Our final assessment of Janssen's behavior is no different from our initial, instinctive reaction to the facts of this case: we are deeply offended. Janssen's conduct is repugnant and completely devoid of any social value. To many, particularly those who have fought for our country, it is a slap in the face.

¶ 55. Our own sense of personal anguish does not end with the words of this opinion. Though our disquieted emotions will eventually subside, the facts of this case will remain a glowing ember of frustration in our hearts and minds. That an individual or individuals might conceivably repeat such conduct in the future is a fact which we acknowledge only with deep regret.

¶ 56. But in the end, to paraphrase Justice Frankfurter, we must take solace in the fact that as members of this court we are not justified in writing our private notions of policy into the Constitution, no matter how deeply we may cherish them or how mischievous we may deem their disregard. *See Barnette*,

319 U.S. at 647 (Frankfurter, J., dissenting). If it is the will of the people in this country to amend the United States Constitution in order to protect our nation's symbol, it must be done through normal political channels.[18]

*By the Court.*—The decision of the court of appeals is affirmed.

---

[18] We note that the Wisconsin legislature recently adopted a resolution urging Congress to amend the Constitution so as to grant states the authority to prohibit desecration of the flag. *See* Assem. J. Res. 52, Subst. Amend. 2 (Wis. 1997). The resolution reads in part:

> be it *Resolved by the assembly, the senate concurring, That* the members of the Wisconsin legislature respectfully urge the Congress of the United States to begin the process of amending the constitution to specify that Congress and the states have the power to prohibit the physical desecration of the flag of the United States. . . .