**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 2, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

**Appeal No.     2019AP2252**

**STATE OF WISCONSIN**

Cir. Ct. No.  2019SC826

**IN COURT OF APPEALS
DISTRICT II**

SHARON BETH KITZEROW,

  PLAINTIFF-APPELLANT,

V.

KELLY THORNE AND MELANIE THORNE,

  DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Manitowoc County: ROBERT P. DEWANE, Judge. *Affirmed*.

¶1  NEUBAUER, C.J.[1]  This is a dispute between neighbors over the shoveling of snow between their properties.  Sharon Beth Kitzerow appeals from an order dismissing her action against Kelly and Melanie Thorne, in which Kitzerow

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

asserted the Thornes violated an easement by shoveling snow with salt onto her property, damaging the grass. She also contended the Thornes' son damaged her garage by hitting it with a basketball. Because Kitzerow agreed to let the Thornes place the snow removed from their driveway onto her property without specifying that they were required to remove any salt, and because Kitzerow failed to show that the Thornes damaged her property or to identify how the son damaged her garage, we affirm.

## BACKGROUND

¶2 Kitzerow's small claims action alleges that the Thornes shoveled snow with salt, which killed the grass on her property, in violation of an easement. She seeks damages of approximately $2000 for landscaping. She also alleges the Thornes' son damaged her garage siding by hitting it with a basketball and seeks $100 for repair to a crack in the vinyl siding.

¶3 The easement, entered into with a prior neighbor (the Carrows) in 2009,[2] states in relevant part:

> 1. Kitzerow grants to the Carrows a perpetual easement over a two foot wide by 150 [foot] long parcel of property owned by her, which abuts the property owned by Carrows … for the following limited purposes:
>
> ….
>
> C. To permit the Carrows to snow blow and shovel snow in the area between the properties, but not to push or blow snow against the Kitzerow driveway or garage;

---

[2] Kitzerow affixes to the back of her appellant brief a purported release and settlement agreement with the Carrows, which appears to settle a prior dispute and addresses the easement. We do not consider documents that are not included in the record, and we see no indication that this was presented to the circuit court. *See* WIS. STAT. RULE 809.19(d) and (e).

D. To permit the Carrows to use the easement area along the driveway for ingress and egress from their vehicles.

2. Neither party shall install any permanent landscaping within the easement area along the driveway or garage.

¶4     In a trial to the court, Kitzerow testified that people, including the Thornes, who owned the property next to hers had permission to blow and shovel snow onto the area between the two properties, as set forth in the easement. This made sense as the location of the homes and the strip of Kitzerow's land between the properties' driveways made it difficult for the neighbors to remove their snow elsewhere.

¶5     Kitzerow testified that every next-door owner, at least since 1944 when she moved into her residence, has had the same privilege to put snow on that strip of land. In the seven years that the Thornes lived there, she only saw them put salt on their driveway, sidewalk, and deck (not on her grass, unless mixed with snow). She testified that city trucks regularly spray salt in front of their houses in the driveway approach, and the Thornes then blow the snow/salt mixture onto her property. Implicit in her testimony was that none of the blowing or shoveling by the other neighbors killed her lawn on the strip, until the Thornes moved in. She testified that she never uses salt on her driveway, and that she did not believe in salt.

¶6     Kitzerow offered a report from the Soil and Forage Analysis Laboratory, apparently affiliated with the University of Wisconsin Madison/Extension. The Thornes argued the report was inadmissible hearsay and that Kitzerow lacked the knowledge to testify. The court decided to consider the report and testimony due to the less formal and rigorous evidentiary rules in small claims proceedings, but that the weight and credibility of the evidence still had to be evaluated. That decision is unchallenged on appeal.

3

¶7     The report identifies two samples, one taken from the front lawn, with a soluble salt level of 9.53 dS/m, and one from the garage area, with a level of 22.30 dS/m.   The report comments, "This soluble salts level would definitely be considered excessive.  Values above 0.4 dS/m are considered moderately elevated."

¶8     Kitzerow testified at trial that the soil lab told her that "grass seed does not germinate in salt."  She did not know what levels of salt are needed to kill either grass or flowers.  She offered a photo of the area near the parties' garages, which shows some brown splotchy areas in the grass.

¶9     Kelly Thorne testified that he uses salt in the winter; that when he shovels, some of the snow goes onto his property and some onto the Kitzerow's; that he has observed her using salt on her sidewalk and driveway; that she shovels that snow onto the same strip of land; that Kitzerow told him she uses a particular type of salt (Morton Solar Salt, which is a water softener salt recommended to her by a contractor) on her property; and that she asked the Thornes to use it.[3]  Kelly offered a recent photo that showed green grass in the area.

¶10    With respect to the garage damage, Kitzerow testified that the damage occurred somewhere between the springs of 2017 and 2018.  When she heard the basketball banging against her garage, she did not go outside to investigate; she looked through her window and saw the Thornes' child playing basketball with his friends.

---

[3] Kitzerow confirmed that she asked the Thornes to use the Morton salt and offered a bag as an exhibit, contending it was safe for grass.  After reviewing the text on the bag, the court found that her contention was unsupported, stating there was "nothing on [the bag] about it being safe for lawns."

¶11 The circuit court concluded that the easement allowed the Thornes to shovel snow onto the area between the properties, even if the snow contained salt, and found that Kitzerow failed to show that the salt used by the Thornes caused damage. The court found that it was unreasonable, particularly in Wisconsin, to believe that snow removed from the driveway would not contain salt and to expect the Thornes to somehow sift it out. The court found that Kitzerow did not establish that the Thornes' child caused damage to the garage. Kitzerow appeals.

## DISCUSSION

*Standard of Review and Applicable Law*

¶12 The circuit court tried the case.[4] Unless the circuit court's findings are clearly erroneous, we will uphold them, and we will review its conclusions of law independently. *Ladwig v. Ladwig*, 2010 WI App 78, ¶16, 325 Wis. 2d 497, 785 N.W.2d. 664.

¶13 An interest that encumbers the land of another is an easement. *AKG Real Estate, LLC v. Kosterman*, 2006 WI 106, ¶2, 296 Wis. 2d 1, 717 N.W.2d 835. An easement "is a liberty, privilege, or advantage in lands, without profit, and existing distinct from the ownership of the land." *Id.* The holder of the easement enjoys the rights to use it "in accordance with the express terms of the easement grant." *Grygiel v. Monches Fish & Fame Club, Inc.*, 2010 WI 93, ¶19, 328 Wis. 2d 436, 787 N.W.2d 6.

---

[4] The claim was originally tried and dismissed before Court Commissioner Charles D. Wingrove in August 2019. The case was retried de novo before the Honorable Robert P. Dewane. *See* WIS. STAT. § 800.14(4).

¶14    Here, the parties dispute how the easement should be interpreted. The construction of an unambiguous easement is a question of law. *AKG Real Estate*, 296 Wis. 2d 1, ¶14. Determining if an easement is ambiguous is also a question of law, which we review de novo. *Id.* When the material extrinsic evidence regarding the intent of the easement, as here, is not in dispute, we review and construe the contract as one of law. *See Garriguenc v. Love*, 67 Wis. 2d 130, 133, 226 N.W.2d 414 (1975).

¶15    Although easements differ substantively from conventional contracts, the rules of interpretation are much the same, particularly for express written easements, as we have here. *See Mnuk v. Harmony Homes, Inc.*, 2010 WI App 102, ¶24, 329 Wis. 2d 182, 790 N.W.2d 514. Whether the holder has contravened the express terms of the easement "requires us to construe the document" granting the easement. *Grygiel*, 328 Wis. 2d 436, ¶19. When the terms are plain and unambiguous, we will construe the document as it stands. *Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653 (Ct. App. 1990). As far as reasonably practicable, a reviewing court will construe a contract so as to make it a rational business instrument and achieve what appears to have been the intention of the parties. *Id.* We give words in agreements their common and ordinary meaning. *Keller v. Keller*, 214 Wis. 2d 32, 37, 571 N.W.2d 182 (Ct. App. 1997).

¶16    If the language, however, is ambiguous, we will consider extrinsic evidence relevant to the parties' intentions, such as the parties' past practices, and we will strive to ascertain the contract's meaning based on what the parties would most reasonably expect, as opposed to one leading to an unreasonable result. *See Columbia Propane, L.P. v. Wisconsin Gas Co.*, 2003 WI 38, ¶25, 261 Wis. 2d 70, 661 N.W.2d 776.

*The Easement Does Not Prohibit the Thornes' Shoveling of Snow that Contains Salt Onto Kitzerow's Property and Kitzerow Failed to Establish Causation*

¶17    Kitzerow agrees that the Thornes are permitted to shovel snow onto her property, but argues that the snow must not contain any salt. The flaws in her argument are several.

¶18    The issue is the meaning of "snow" in this easement. Whether unambiguous or ambiguous, we agree with the circuit court that the permission to shovel snow from the neighboring driveway contemplates that the snow may contain salt.

¶19    As Kitzerow points out, and the circuit court emphasized, this easement permits the placement of shoveled snow during winters in Wisconsin on a strip of grass next to a driveway. For fifty-five feet of the Thornes' driveway, they have no other adjacent place to deposit snow they shovel or snow blow from their driveway.

¶20    Salt is used routinely in the winter to prevent ice buildup on driveways, sidewalks, and streets. This is an issue of safety—salt minimizes accidents and injuries caused by ice buildup. Consequently, as it pertains to areas around a home used for driving and walking, snow falling in those areas mixes with the salt. As a practical matter, it is wholly unreasonable to construe an easement explicitly permitting the placement of snow removed from a driveway to absolutely preclude the use of salt or, alternatively, require filtering of salt.

¶21    Shoveled snow in Wisconsin means not just frozen water but everything that is commonly mixed in prior to and during removal, including salt. Thus, the common and ordinary meaning of shoveled snow is that it will contain salt, which comports with the reasonable expectations of the parties.

¶22 Indeed, the easement precludes installing landscaping in this area and permits the neighbors to step on the easement when getting in and out of their cars in the driveway. This clearly contemplates that the area was not intended to be damage free.

¶23 Kitzerow herself testified that the city trucks passing the houses used salt and regularly pushed it into the driveway approaches. She complains that the Thornes shoveled it onto her property and not theirs. Kelly Thorne denied this, stating he shoveled it both ways in the area away from their garage. In any event, it is clear that snow with salt was regularly pushed by the city into the driveways and onto Kitzerow's property, presumably for decades. It was clearly known in 2009 that salt would be mixed in with snow and then shoveled onto Kitzerow's property. So, even if determined to be ambiguous, a reasonable interpretation of the easement (as supported by the course of dealing that took place before the easement was put into writing) is that it allowed for at least some shoveling of salt onto her property.

¶24 In short, as the circuit court aptly found, if the parties had meant to preclude Kitzerow's neighbors from using salt on their driveway, they could have bargained for it. If Kitzerow intended to preclude the neighbor from shoveling the snow/salt pushed into the driveway approach onto her grass, she could have bargained for that. Presumably, given Wisconsin winters and serious safety concerns associated with walking and driving on driveways and in the street, this would not be acceptable. Both the plain meaning of shoveled snow from a driveway and snow pushed from the street, as well as the parties' history and past practices, contemplate that the snow will contain some salt.

8

¶25    We also cannot conclude that the circuit court clearly erred when it found that Kitzerow failed to prove that the Thornes' use of salt killed her grass. The court implicitly found this, with evidence suggesting some salt is safe for grass and other salt is not (a contradiction not lost on the court). Kitzerow did not establish that the Thornes used salt that was not safe for grass.

¶26    To the extent the court did not make more direct findings on causation, we assume it made the necessary findings and accept them if supported by the record. *See Town of Avon v. Oliver*, 2002 WI App 97, ¶23, 253 Wis. 2d 647, 644 N.W.2d 260. While reviewing those findings, we search for evidence supporting the court's decision, not for evidence of a decision not made by the court. *See Noble v. Noble*, 2005 WI App 227, ¶15, 287 Wis. 2d 699, 706 N.W.2d 166. The record here readily supports the necessary findings.

¶27    Kitzerow offered a report to show that the Thornes' salt use caused damage to her grass. The circuit court found this unavailing and we agree. The report is inconclusive. It merely says the salt in two samples taken on one date, over a period of the entire winter, was excessive, but Kitzerow fails to use this barebones assessment to prove that the Thornes were liable for the damage to parts of her grass. Among other things, the report does not address whether the Thornes recently laid down salt at that time, or even whether the salt came from the Thornes (as compared to from street snow/salt). Nor does it identify how much salt kills grass or whether there were other causes for the problem with the grass.

¶28    Kitzerow's causation argument was further undermined when the circuit court found her testimony that some salt (Morton salt) was safe and other salt was not to be both unbelievable and inconsistent. And, in any event, the record does not reflect that the salt used by the Thornes, much less that any use, was excessive.

Further, while Kitzerow offered a photo showing bare spots in the grass, the Thornes offered recent photos showing green grass throughout the area. The weight of the evidence and witness' credibility are measured by the trier of fact. *See Fricano v. Bank of America NA*, 2016 WI App 11, ¶33, 366 Wis. 2d 748, 875 N.W.2d 143 (2015) (trier of facts are better positioned than reviewing courts to evaluate credibility, weight, and relevancy of the factual evidence).

*Kitzerow Failed to Prove that the Thornes' Child Caused any Damage to Her Garage*

¶29     We also agree that Kitzerow failed to establish that the Thornes' son caused the crack in the vinyl siding of her garage.

¶30     We presume this is a negligence claim. Hornbook tort law tells us the following must be proved: a duty, a breach, a causal connection between the breach and damage, and damage. *See Hansen v. Texas Roadhouse, Inc.*, 2013 WI App 2, ¶18, 345 Wis. 2d 669, 827 N.W.2d 99 (2012). Kitzerow gives a full one-year span as to when the damage occurred, making it an uphill battle to identify what caused it. Beyond that, she admits that there was a group of boys playing basketball. Any one of them could have caused the damage. It is rank speculation to identify the Thornes' child as the one who is culpable. Kitzerow failed to establish the fundamental elements for her negligence claim: that the Thornes' child breached any duty or was otherwise negligent (she cannot identify him as responsible for the crack in the vinyl siding) or that any alleged negligence by him was the actual cause of the complained-of damage (same).

¶31　As noted above, a circuit court's findings are not to be disturbed on appeal unless they are clearly erroneous. On this record, we cannot say that they are clearly erroneous.[5]

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[5] The Thornes have moved for sanctions under WIS. STAT. RULE 809.25(3), contending Kitzerow's appeal is frivolous. An appeal is frivolous if it "was filed, used or continued in bad faith, solely" to harass or injure another, RULE 809.25(3)(c)1., or if the party knew, or should have known, that the appeal "was without any reasonable basis in law or equity and could not be supported by a good faith argument for" a change of existing law, RULE 809.25(3)(c)2. This is a question of law. *See Larson v. Burmaster*, 2006 WI App 142, ¶45, 295 Wis. 2d 333, 720 N.W.2d 134. The *entire* appeal must be frivolous, and we resolve any doubt against such a finding. **Baumeister v. Automated Prods., Inc.**, 2004 WI 148, ¶¶25-26, 277 Wis. 2d 21, 690 N.W.2d 1. We do not find that this appeal is frivolous, and as such, no sanctions will be imposed. The motion is denied.